# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOHN BAMBERG, as Independent Administrator of the Estate of JAVAR BAMBERG, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 13-cv-6837 |
| CITY OF EVANSTON, | ) ) | Judge Robert M. Dow, Jr. |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff John Bamberg's first amended complaint alleges an equal protection violation, wrongful death, and intentional infliction of emotional distress by Defendant City of Evanston. Defendant has moved to dismiss [17] Bamberg's first amended complaint. For the reasons set forth below, the Court grants in part Defendant's motion to dismiss [17] and dismisses Plaintiff's § 1983 claim for an alleged constitutional violation. The Court dismisses without prejudice Plaintiff's state law claims.

## I. Background

On December 12, 2012, around 2:00 a.m., Plaintiff John Bamberg's son, Javar Bamberg, was walking in an alley located at the 1700 block of Grey Avenue and was shot by an adult male whose identity remains unknown to date. Immediately after the incident, a 911 call was placed from within the vicinity of 1700 Grey Avenue by a witness to the shooting, who demanded emergency attention for Javar. The City of Evanston allegedly responded to the 911 call by dispatching police officers to the location. After arriving at the scene, officers secured and cordoned off the area. Plaintiff alleges that when the officers arrived on the scene, Javar was still

breathing and able to speak, albeit feebly, and to move his extremities. According to Plaintiff, the officers impeded Javar's recovery by failing to timely notify the proper medical personnel of the need for immediate attention and transfer to the nearest hospital or trauma center. Due to this alleged failure to timely notify the proper medical personnel, Javar died on the scene.

On September 23, 2013, Plaintiff filed this action against the City of Evantson, the Evanston Fire Department, and Evanston Police Department, alleging a violation of Javar's equal protection rights, as well as state law claims of intentional infliction of emotional distress ("IIED") and wrongful death. On November 26, 2013, Defendants filed a motion to dismiss Plaintiff's complaint for failure to state a claim. Plaintiff sought leave from the Court to amend his complaint, which the Court granted, and then filed a first amended complaint, asserting essentially the same claims but naming only the City of Evanston. The City of Evanston contends that Plaintiff has failed to cure the deficiencies in his complaint and moves to dismiss Plaintiff's first amended complaint.

## II.     Legal Standard for Rule 12(b)(6) Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the suit. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citations omitted). To survive a Rule 12(b)(6) motion to dismiss, a complaint must satisfy the requirements of Rule 8. Fed. R. Civ. P. 8. First, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level,"

assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555, 569 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic*, 550 U.S. at 579-80. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations, quotation marks, and brackets omitted).

### III. Analysis

In Count I, Plaintiff asserts a § 1983 claim for violation of Javar Bamberg's right to equal protection of law.[1] Plaintiff alleges that Evanston is divided by socio-economic status and that the more affluent portions of Evanston are inhabited by those of Caucasian descent, while the less affluent are home primarily to individuals of African-American descent. Plaintiff alleges that Evanston expends more of its resources on the affluent Caucasian portions of the City. Plaintiff further alleges that Evanston personnel recognized Javar from prior encounters and that due to his racial background, "Evanston Police Officers did not immediately notify emergency medical personnel" of Javar's condition. Finally, Plaintiff alleges that because of Javar's alleged association, Evanston "arbitrarily and irrationally allowed Javar to bleed to death before

---

[1] In order to state a claim under § 1983, Plaintiff must allege that Defendant was acting under color of state law when it deprived him of a constitutional right. See *Estate of Sims ex rel Sims v. County of Bureau,* 506 F.3d 509, 514 (7th Cir. 2007) (citing *Christensen v. County of Boone, Illinois,* 483 F.3d 454, 457 (7th Cir. 2007)). "Section 1983 is not itself a source of any substantive rights, but instead provides the means by which rights conferred elsewhere may be enforced." *Bublitz v. Cottey,* 327 F.3d 485, 488 (7th Cir. 2003) (citing *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997)). To allege a § 1983 violation, Plaintiff must do more then make a general allegation that his constitutional rights were violated; he must allege a deprivation of a specific constitutional right. See *Trautvetter v. Quick,* 916 F.2d 1140, 1148 (7th Cir. 1990) (citing *Wilson v. Civil Town of Clayton,* 839 F.2d 375, 379 (7th Cir. 1988)).

notifying emergency medical personnel." Plaintiff claims that these actions violated Javar's equal protection rights.

A. **Matters of Public Record**

When exhibits are matters of public record, a court may take judicial notice of them for the purpose of deciding a motion to dismiss without converting the 12(b)(6) motion into a motion for summary judgment. See *Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. 2003) ("in resolving a motion to dismiss, the district court is entitled to take judicial notice of matters in the public record"); *Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000) (same). The Illinois Freedom of Information Act, 5 ILCS 140/1 *et seq*., provides that police and fire department records and 911 and dispatch audio are all public record (with certain exceptions and redaction of sensitive information not pertinent to this case). The police and fire department records referenced below are a matter of public record and can be recognized by this Court for the purpose of Defendant's Rule 12(b)(6) motion to dismiss.[2]

At 1:59 a.m., Evanston Police responded to a "shots fired" call in the area of 1800 block of Hovland in Evanston, Illinois. At 2:01 a.m., the victim, later identified as Javar, was located in the alley behind 1731 Grey. Javar appeared to be breathing, but was unresponsive. Javar did not speak or move. Upon seeing Javar, Evanston Police notified dispatch. At 2:02:59, the alarm sounded at the Fire Department. The Evanston Fire Department Emergency Medical Services ("EMS") engine was dispatched at 2:03:33 a.m and the "rescue unit" or ambulance was dispatched at 2:03:34 a.m. The EMS engine was en route by 2:04:53 a.m., and the ambulance was en route at 2:05:52. The EMS engine was the first dispatch vehicle to arrive at 2:06:53 a.m. Upon arrival, one of the paramedics assigned to the engine observed a gunshot to Javar's chin

---

[2] Plaintiff did not make a FOIA request prior to filing either his verified complaint or first amended complaint.

4

leaving massive trauma to his head.  Based on matters of public record, within five minutes of the time that the police first located Javar, the EMS engine was on the scene verifying that Javar had no vital signs.

> B.  Equal Protection (Count I)

Plaintiff's claim based on equal protection must establish that the City of Evanston treated Javar differently from others who were similarly situated, that the City intentionally treated him differently because of his membership in a class, and that the discriminatory intent was not rationally related to a legitimate governmental interest. *Schroeder v. Hamilton Sch. Dist.*, 282 F.3d 946, 953-54 (7th Cir. 2002).  In other words, Plaintiff must show that the City discriminated against Javar based on his membership in a definable class.  See *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979); *Nabozny v. Podlesny*, 92 F.3d 446 (7th Cir. 1996) ("In order to establish liability under § 1983, [a plaintiff] must show that the defendants acted with a nefarious discriminatory purposes and discriminated against him based on his membership in a definable class.") (internal citations omitted).  Plaintiff must establish purposeful or intentional discrimination implying "[m]ore than intent as volition or intent as awareness of consequences * * * [but that a] decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Naborzny*, 92 F.3d at 453-54 (citing *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982).  A showing that a defendant was negligent is insufficient to meet the requirements of showing a violation of equal protection. *Id*.

There is no constitutional right to governmental services. See *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196-97 (1989) ("Due Process Clause does not require the State to provide its citizens with particular protective services[.] [I]t follows that the

5

State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them."). The equal protection clause, "concerned as it is with equal treatment rather than with establishing entitlements to some minimum of government services, does not entitle a person to adequate, or indeed to any, police protection." *Hilton v. City of Wheeling*, 209 F.3d 1005, 1007 (7th Cir. 2000) (emphasis added). However, the "selective withdrawal of police protection, as when the Southern states during the Reconstruction era refused to give police protection to their black citizens, is the prototypical denial of equal protection." *Hilton*, 209 F.3d at 1007 (citing *Slaughter-House Cases*, 83 U.S. (16 Wall.) 36, 70 (1872)).

Plaintiff bases his equal protection claim on race. Plaintiff alleges that Evanston is divided by socio-economic status and that the more affluent portions of Evanston are inhabited by those of Caucasian descent, while the less affluent are home primary to individuals of African-American descent. Plaintiff's equal protection allegations extend to the City's purported expending of resources in favor of ensuring the safety of white affluent residents. There are no facts alleged to indicate what "resources" are "expended" in favor of one race versus another. Further, there are no facts alleged to connect the "expending" of "resources" to the medical response to Javar and his gunshot wound to the head. Instead, Plaintiff's own allegations undermine his case. Plaintiff's first amended complaint reveals that police did respond to the allegedly less affluent area that is allegedly inhabited by the City's African-American residents and that police did call for emergency medical services. The only issue is the "adequacy" and "timeliness" of their call. As such, Plaintiff does not allege that the City "selectively" withdrew its police or protective services. There was no "refusal" to provide governmental protections based on Javar's race as the City's personnel both responded to the situation and called for medical assistance. At best, Plaintiff pleads negligence by the City personnel's alleged actions in

6

waiting too long to call for medical assistance. Negligence is not enough to state a claim for violation of equal protection. See *Nobozny*, 92 F.3d at 454; see also *Archie v. City of Racine*, 847 F.2d 1211, 1219-20 (7th Cir. 1988) (gross negligence in failing to send requested rescue services did not violate the plaintiff's constitutional rights).

Further, pursuant to Federal Rule of Civil Procedure 11, Plaintiff and his counsel have a duty to conduct a "reasonable inquiry," such that his pleading is "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that "the factual contentions have evidentiary support." Fed.R. Civ. P. 11. This is the second round of dispositive motion briefing on Plaintiff's allegations. In each motion, the City provided public records that provide a timeline for Plaintiff's allegations—specifically, audio and corresponding reports from the night of the alleged incident that demonstrate that within five minutes of locating Javar (and within seven minutes of being notified that shots had been fired), the Fire Department was on scene verifying that Javar had no vital signs. In response, Plaintiff contends, "Plaintiff is by no means required to prove his case in the pleadings." See Pl.'s Resp. at 8. This is true, but Plaintiff is required to plead a claim for which relief can be granted. There is nothing, either in Plaintiff's allegations or the actual records from that night, that reveals that Javar was treated any differently on the basis of his race. Simply put, Plaintiff has failed to state a constitutional claim.

    **C.    State Law Claims (Counts II and III)**

In addition to his § 1983 claim, Plaintiff also sued Defendant for wrongful death and intentional infliction of emotional distress. Because the Court has dismissed the only claim over which it has original jurisdiction, it must now address whether to retain jurisdiction over Plaintiff's state law claims. See 28 U.S.C. § 1367(c)(3). The Seventh Circuit consistently has

stated that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additivies Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993). Finding no justification for departing from that "usual practice" in this case,[3] the Court dismisses without prejudice Plaintiff's state law claims.

## IV. Conclusion

For the reasons set forth below, the Court grants in part Defendant's motion to dismiss [17] and dismisses Plaintiff's § 1983 claim for an alleged constitutional violation. The dismissal is with prejudice. Plaintiff has not requested another chance to replead (see *James Cape & Sons Co. v. PCC Constr. Co.,* 453 F.3d 396, 400–01 (7th Cir.2006)) (rejecting the plaintiff's argument that the district court erred in dismissing its complaint with prejudice, rather than without prejudice and with leave to amend, where the plaintiff did not request leave to amend) and in fact has already been given leave to replead once. Furthermore, the Court has detailed the obstacles that an amended complaint would face and Plaintiff's set of facts cannot overcome those hurdles. See *Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1085 (7th Cir. 1997) ("Even though Rule 15(a) provides that 'leave shall be freely given when justice so

---

[3] In *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-53 (7th Cir. 1994), the Seventh Circuit noted that there occasionally are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point to a federal decision of the state-law claims on the merits." The first example that the Court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Id*. at 1251. That concern is not present here, however, because Illinois law gives Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to refile those claims in state court. See 735 ILCS 5/13-217; *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008). Dismissal without prejudice also is appropriate here because substantial judicial resources have not been committed to the state law claims. *Wright*, 29 F.3d at 1251. Finally, this is not a circumstance in which "it is absolutely clear how the pendent claims can be decided." *Id*.

requires,' a district court may deny leave to amend for * * * futility. The opportunity to amend a complaint is futile if the complaint, as amended, would fail to state a claim upon which relief could be granted.") (citation and some internal quotation marks omitted).  The Court dismisses without prejudice Plaintiff's state law claims.

Dated: May 7, 2014                                        _____
                                                          Robert M. Dow, Jr.
                                                          United States District Judge